187 N.J. Super. 406 (1982)
455 A.2d 89
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GLENN M. CARLOS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1982.
Decided December 1, 1982.
*409 Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.
Joseph P. Rem, Jr., designated counsel, argued the cause for appellant (Joseph H. Rodriguez, Public Defender, attorney).
Mary L. Cupo, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Mary L. Cupo of counsel and on the brief).
Glenn M. Carlos, appellant, filed a supplemental brief pro se.
The opinion of the court was delivered by J.H. COLEMAN, J.A.D.
The crucial issue raised by this appeal is whether two or four robberies have been committed when a robber obtains money from two victims in the presence of two additional persons after threatening the four of them with a gun. Succinctly stated, the question presented in these robbery convictions is whether the person who is threatened must also be the victim of a theft or attempted theft. We hold that only two robberies were committed *410 because each conviction must involve a separate theft or attempted theft unless there are special circumstances not here involved. The convictions on counts 3 and 4 are vacated.
A brief review of the procedural background and facts giving rise to this appeal is essential to a resolution of the pivotal issues raised. The offenses were committed on September 15, 1980 at John's Arco Station, which is located on Route 20 in the vicinity of 33rd Street, in Paterson. The station was owned by John Pellegrino and his wife Frances. Edward Merritt worked as a gasoline pump attendant. Dorothy Gourley was a customer. These four people were in the small gas station office when defendant entered with his hands in his pockets. Just as Mrs. Pellegrino was about to offer assistance to defendant, he grabbed Merritt's shoulder, spun him around, and struck him in the chest with the butt end of an automatic revolver. Defendant then pointed the gun at Merritt and demanded money. Defendant ordered the four people to lie on the office floor. Merritt hesitated momentarily; whereupon he was shot in the right thigh.
Mr. Pellegrino did not immediately comply with the command to lie on the floor. Mrs. Pellegrino yelled to him to get down on the floor. As Pellegrino turned sideways, defendant fired a shot at him but missed his mark. Pellegrino and Merritt threw onto the floor money they had on their person. Defendant scooped up most of the money while pointing the revolver at the four people. Defendant then ran down East 33rd Street with Pellegrino in pursuit.
Following a jury trial defendant was convicted of four first degree robberies pursuant to N.J.S.A. 2C:15-1, to wit: Edward Merritt, count 1; John Pellegrino, count 2; Frances Pellegrino, count 3; and Dorothy Gourley, count 4. He was also convicted for violations of N.J.S.A. 2C:12-1 b(1): aggravated assault, Edward Merritt, count 5; and attempted aggravated assault, John Pellegrino, count 6. Under count 7 defendant was convicted for violating N.J.S.A. 2C:39-5 b, possession of a handgun without a permit.
*411 Defendant was sentenced on count 1 to an extended custodial term of 30 years (N.J.S.A. 2C:44-3 a and N.J.S.A. 2C:43-7 a) as a multiple offender. He is required to serve 15 years before being eligible for parole (N.J.S.A. 2C:43-7 b). The judge recommended that defendant receive drug and alcohol rehabilitation while institutionalized. He was directed to pay $500 to the Violent Crimes Compensation Board pursuant to N.J.A.C. 2C:43-3.1. On counts 2, 3 and 4 defendant received a 20-year term on each which was made to run concurrent with count 1. A penalty of $25 was assessed on each of the three counts. As to count 5 defendant received a concurrent ten-year term and a $750 penalty. Under count 6 he received a concurrent ten-year term and a $25 penalty. Finally, the sentence on count 7 was a five-year concurrent term and a $25 penalty.
In this appeal defendant contends:
1. THE DENIAL OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT FOUR CHARGING ROBBERY OF DOROTHY GOURLEY AND THE COURT'S INSTRUCTION TO THE JURY ON COUNT FOUR DURING JURY DELIBERATIONS EXPOSED DEFENDANT TO CRIMINAL LIABILITY FOR ROBBERY BEYOND THE SCOPE OF THE LEGISLATURE'S INTENT UNDER N.J.S.A. 2C:15-1.
2. THE DENIAL OF DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL ON THE CHARGE OF ROBBING FRANCES PELLEGRINO EXPOSED DEFENDANT TO LIABILITY FOR ROBBERY BEYOND THE SCOPE OF N.J.S.A. 2C:15-1.
3. THE COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL AS TO EDWARD MERRITT.
4. THE COURT SHOULD HAVE MERGED THE ASSAULT CHARGES INTO THE ROBBERY CHARGES PRIOR TO SUBMISSION OF THE CASE TO THE JURY.
5. THE DEFENDANT'S SENTENCE WAS MANIFESTLY EXCESSIVE.

I. Elements of Robbery
The indictment charged that the offenses were committed on September 15, 1980. The robbery statute, N.J.S.A. 2C:15-1, on that date read:
a. Robbery defined. A person is guilty of robbery, if in the course of committing a theft, he:
(1) Inflicts bodily injury upon another; or

*412 (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens immediately to commit any crime of the first or second degree.
An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
b. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.
We perceive the offense of robbery under N.J.S.A. 2C:15-1 to include the following elements: (1) theft or attempted theft; (2) intimidating or assaultive conduct consisting of (a) inflicting bodily injury upon another[1] or (b) threatening another with or purposely putting him in fear of immediate bodily injury or (c) committing or threatening immediately to commit any crime of the first or second degree; (3) the intimidating or assaultive conduct must have occurred during the theft or attempted theft or in immediate flight after the theft or attempted theft, and (4) defendant must have acted purposely. Theft is defined, generally, as the unlawful taking or exercise of unlawful control over property of another with purpose to deprive him thereof. Model Jury Charge 2.273. See also, N.J.S.A. 2C:20-3. Attempted theft is defined by combining the foregoing definition of theft with N.J.S.A. 2C:5-1 a. It is an abortive effort to perpetrate a theft.
The victim need not own the property taken or attempted to be taken. It is enough that the victim had a possessory or custodial interest in the property. State v. Butler, 27 N.J. 560, 589 (1958). The robbery statute makes no specific reference to the ownership of the property taken. The fact that the cash or personalty belongs to some one other than the thief is sufficient. State v. Ford, 92 N.J. Super. 356, 363 (App.Div. 1966).

*413 II. Comparison of 2C Robbery to Prior Law.

The State argues that the robbery statute under the New Jersey Code of Criminal Justice eliminates the common law requirement that the victim of force or intimidation in a robbery also be the victim of a theft. This contention requires a discussion of the current statute's roots in prior law.
The common law defined robbery as "the felonious taking of personal property from the person or custody of another by force or intimidation." State v. Butler, supra, 27 N.J. at 589; State v. Bowden, 62 N.J. Super. 339 (App.Div. 1960). Our prior robbery statute, N.J.S.A. 2A:141-1, was declaratory of the common law.
Clearly, the Legislature intended robbery under N.J.S.A. 2C:15-1 to represent a departure from the past in several respects. The predecessor to N.J.S.A. 2C:15-1, N.J.S.A. 2A:141-1, generally required the force or intimidation to precede or become concomitant with the larceny. State v. Culver, 109 N.J. Super. 108 (App.Div. 1970). Our present statutory law requires consideration of the offender's conduct not only during a theft or attempted theft, but also during immediate flight after a theft or attempted theft.
The apparent rationale for including conduct involved in immediate flight in the present law is the offender's willingness to use force against those who would restrain him in flight. This willingness creates a compelling inference that the offender would have used force to commit the theft or attempted theft had there been need for it. II New Jersey Penal Code: Commentary, Final Report of the New Jersey Criminal Law Revision Commission 214 (1971) (hereinafter Final Comm'n Report). See, also, Model Penal Code, Tentative Draft No. 11, at 70, n. 2.
Additionally, under prior law, asportation was required, no matter how slight. State v. McCoy, 114 N.J. Super. 479 (App.Div. 1971). Significantly, the New Jersey Code of Criminal Justice permits a conviction for robbery on the basis of an attempted theft where the other elements are present. Also, *414 N.J.S.A. 2C:15-1 includes the former crimes of attempted robbery, N.J.S.A. 2A:141-1 and N.J.S.A. 2A:85-5; assault with intent to rob, N.J.S.A. 2A:90-2; assault with a dangerous weapon while demanding property, N.J.S.A. 2A:90-3, and larceny of trade secrets from a person by force or violence, N.J.S.A. 2A:119-5.4.
Thus, the enactment of 2C:15-1 manifests a legislative intent to adopt a more expansive concept of robbery. There is no indication, however, that this intended expansion is as extensive as the State urges.
A comparison of N.J.S.A. 2C:15-1 robbery to N.J.S.A. 2A:141-1 robbery, evinces a legislative plan in the Code to retain the common law touchstones of the crime, to wit, larceny coupled with fear, force, intimidation or assaultive behavior. When the Legislature referred to injuring or threatening another in N.J.S.A. 2C:15-1, it did not intend to change the common law requirement of larceny. Nowhere in the legislative process was there any such suggestion.
Indeed, the framers of the Code recognized there are only a few circumstances, none here involved, in which there can be a conviction for robbery without a theft or attempted theft from the victim of the threats, force, injury or intimidation. The Final Comm'n Report, supra at 214, states:
In a few circumstances, however, the Code would apply where property is not taken from the person or presence. For example, an offender might threaten to shoot the victim in order to compel him to telephone directions for the disposition of property located elsewhere.
When interpreting the intent of the Legislature, any unreasonable construction must be rejected when a reasonable reading is apparent. Our goal is to effectuate the legislative intent. State v. Fearick, 69 N.J. 32, 37 (1976). Hence, we reject the strained interpretation advanced by the State. Defendant could not have been properly found guilty of robbery of each person subjected to force or intimidation unless a theft or attempted theft from that person was proved.

*415 III. The Contentions

Defendant contends that his motion for a directed judgment of acquittal on count 4 (robbery) of the indictment should have been granted. The motion was based on the State's failure to prove a theft or attempted theft from Ms. Gourley. Defendant further contends that the court erred when it answered a question from the jury.
The judge's reinstruction of the jury in response to a question summarizes his charge to the jury on the four counts of robbery. He stated:
[I]n order for you to find the defendant guilty of robbery in the first degree, the State is required to prove each of the following elements beyond a reasonable doubt. One, that the defendant was in the course of committing a theft. Two, that while in the course of committing that theft he inflicted bodily injury or that while in the course of committing that theft, the defendant threatened another or purposely put him in fear of immediate bodily injury. Three, that while in the course of committing that theft, the defendant was armed with or used or threatened the immediate use of a deadly weapon and four, the defendant acted purposely in committing the theft and threatening another or purposely put another in fear of immediate bodily injury. You will notice that the word another is used throughout the statement of law that I just read to you. When the Statute says inflicts bodily injury upon another or threatens another with or purposely puts him in fear of immediate bodily injury, it does not mean only the same person from whom the money was taken. It may include a person who was present during the commission of a theft, but from whom no money was taken. [The italics indicates what was not previously said to the jury.]
One of the reasons for denying the motion for a directed verdict of acquittal was the judge's recognition that the jury could find defendant guilty of robbery on counts 3 and 4 based upon an attempted theft from Ms. Gourley and Mrs. Pellegrino. Nevertheless, our careful study of the record reveals that the judge never instructed the jury on an attempted theft from Ms. Gourley. Furthermore, in giving the supplemental instructions to the jury, the judge instructed the jury that defendant could be guilty of a first degree robbery of Ms. Gourley by threatening her with the gun even though there was no theft or attempted theft from her. We find defendant's contention that the judge erred in the jury instructions to be most persuasive.
*416 Attempted theft is an included offense of theft because it contemplates conduct which goes beyond mere preparation to commit theft but stops short of completion. For purposes of punishment, however, no distinction is made. Since the robbery statute contemplates the commission of either a theft or attempted theft, the jury must be instructed as to the meaning of either or both in all cases. In this case, money was demanded from the four people in the tiny office. Each was threatened with the gun and ordered to lie on the floor. Once the two shots were fired, defendant hurriedly scooped up some of the money from the floor and ran off, leaving the remainder on the floor. We are, therefore, satisfied that a factual underpinning existed that would have permitted the jury to find defendant guilty of robbery based on an attempted theft from Ms. Gourley.
The confusion resulting from the omission of an appropriate instruction on attempted theft was compounded by error in the judge's recharge of the jury. In answer to the jury's question concerning count 4 in light of the fact that defendant did not take property from Ms. Gourley, the judge additionally instructed that when the robbery statute says "threatens another with immediate bodily injury" the threat could be directed against "a person who was present during the commission of a theft, but from whom no money was taken."
Absent the appropriate charge on attempted theft and given this erroneous supplemental charge, the issue of theft or attempted theft from Ms. Gourley was effectively removed from the jury. We hold that each conviction for robbery must involve a theft or attempted theft from the possession or custodial care of the same person who is intimidated, threatened or injured, except in a limited number of special circumstances not here involved. Since the issue of theft or attempted theft from Ms. Gourley was removed from the jury's consideration, the conviction for robbery under count 4 is vacated.
Defendant next contends that the robbery conviction under count 3 of the indictment was improper because Mrs. *417 Pellegrino was not the victim of a theft or attempted theft. We find this contention persuasive for the same reasons previously stated. We note, however, that the evidence was adequate to permit the jury to conclude that Mrs. Pellegrino was co-owner of the business. Arguably, she was in joint constructive possession of the gas station money which her husband and Merritt surrendered to defendant from their persons. Additionally, the evidence was also sufficient to permit the jury to conclude that she was threatened by defendant. But, here again, the trial judge did not instruct the jury on joint constructive possession. Despite this evidence, such a theory was never submitted for the jury's consideration. Hence, the conviction on count 3 must be vacated.
The State has urged us to mold the verdicts on counts 3 and 4 to find defendant guilty of the lesser included offense of aggravated assaults if the conviction for robberies are vacated. The resulting convictions would be based upon defendant's act of pointing the gun in the direction of Mrs. Pellegrino and Ms. Gourley, in violation of N.J.S.A. 2C:12-1 b(4). These lesser included fourth degree offenses were not submitted to the jury. However, it is well established that a guilty verdict on a greater offense may be molded and reduced by a court to convict on a lesser included offense upon a finding that the conviction for the greater offense was not justified. State v. Washington, 60 N.J. 170, 173 (1972); State v. Hauser, 147 N.J. Super. 221, 228 (App.Div. 1977), certif. den. 75 N.J. 27 (1977). We are satisfied from our study of the record that all the elements of the lesser included offense of aggravated assault have been established and no prejudice to defendant will result. The convictions for first degree robberies required the jury to find that the victims in counts 3 and 4 had been threatened when defendant pointed the gun at them or in their direction. Implicit in the verdict was a finding of guilt on the lesser included offense. The convictions on counts 3 and 4 are molded, therefore, to reflect convictions for aggravated assaults.
*418 The contention that the improper conviction on counts 3 and 4 tainted the verdict on other counts is untenable. State v. Vaccaro, 142 N.J. Super. 167 (App.Div. 1976), certif. den. 71 N.J. 518 (1976). The error involved in counts 3 and 4 was the failure to charge the jury on attempted theft and joint constructive possession, essential elements under the facts of the case. Such errors clearly lack the capacity to taint the verdicts on other counts.
Defendant further contends that the aggravated assault upon Merritt and Pellegrino should be merged with the robbery offenses against them. We find this contention unpersuasive. The first degree robbery of Merritt under count 1 was based on committing a theft from him while armed with or threatening him with a deadly weapon. N.J.S.A. 2C:15-1b; State v. Butler, 89 N.J. 220, 228-229 (1982). The aggravated assault on Merritt under count 5 was based on defendant shooting Merritt in the right thigh. N.J.S.A. 2C:12-1 b(1). The first degree robbery of Pellegrino under count 2 was based on a theft from him by defendant while armed with or threatening him with a deadly weapon. The attempted aggravated assault on Pellegrino was based on defendant firing a shot at him which went wide of its mark. N.J.S.A. 2C:12-1 b(1). The elements of each offense are different. Thus, no merger is warranted. State v. Best, 70 N.J. 56 (1976); State v. Hoag, 21 N.J. 496 (1956), aff'd 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958).
The penalty for each of the four offenses was enhanced because the gun was possessed or used during the commission of the offenses. The enhancement provision is found in the predicate statute rather than in an external statute such as was the case under N.J.S.A. 2A:151-5. No merger is required where the possession or use of the deadly weapon has caused the sentence to be increased on several counts. The Legislature has determined that the possession or use of the gun renders each offense more serious.
*419 Finally, defendant contends that there should have been an acquittal on the charge of robbing Merritt and that the sentence is excessive. In a pro se supplemental brief defendant seeks a new trial based on ineffective assistance of counsel. He contends that his attorney failed to (1) seek a Wade hearing, (2) file a motion seeking to disqualify the trial judge and (3) excuse a juror who previously served on a similar case. We have carefully considered these contentions and the arguments advanced in support of them. We find all of these contentions are clearly without merit. R. 2:11-3(e)(2).
Accordingly, the convictions for first degree robbery on counts 3 and 4 are vacated. The judgment of conviction on all other counts are affirmed. The matter is remanded to the trial court for entry of judgments of conviction on counts 3 and 4 for violations of N.J.S.A. 2C:12-1 b(4) and sentencing thereon.
GAULKIN, J.A.D. (concurring).
The proofs at trial showed that four persons were put in fear in the course of defendant's commission of thefts from two of those persons. The jury was instructed that defendant could be found guilty of robbery of each person who was put in fear, whether or not a theft or attempted theft from that person was proved.
I regard that instruction to be error, as do my colleagues. As it bears on the facts here, N.J.S.A. 2C:15-1 requires proof of (1) the commission of a theft or attempted theft accompanied by (2) the putting of "another" in fear of immediate bodily injury. Putting a multiplicity of persons in fear does not multiply the number of robberies; since robbery requires proof of theft or attempted theft, each such theft or attempted theft can yield only a single robbery conviction no matter how many persons are intimidated in connection therewith. The State did not urge at trial that it had proved more than two thefts or attempted thefts, and the record thus does not support convictions for more than two robberies. The offenses committed against Ms. Gourley *420 and Ms. Pellegrino were aggravated assaults and the verdict is properly molded to so reflect. N.J.S.A. 2C:12-1(b)(4); State v. Washington, 60 N.J. 170, 173 (1972).
While I therefore join in the judgment rendered by my colleagues, I do not join in their broader discussion of the intent, scope or interpretation of N.J.S.A. 2C:15-1 or the hypothetical theories which the State might have pursued at trial, all of which are unnecessary to the determination of the appeal.
NOTES
[1] Effective February 6, 1981 this subsection was amended to read, "Inflicts bodily injury or uses force upon another," by L. 1981, c. 22, § 1, to cover the so-called blindside muggings that are typical in many purse-snatchings.